Bernard Ryan, P. J.
Upon the first trial of this case it was submitted solely upon the doctrine of res ipsa loquitur and an award was made based upon that principle. (Minotti v. State of New York, 7 Misc 2d 252 [1957].) Judgment was reversed on the law and the facts and a new trial granted. (6 A D 2d 990.) The essential facts are recited in the published reports.
By stipulation of the parties the record of the first trial became a part of the record of the second trial. Supplementing that, claimants called to testify a professional engineer, Leigh St. John, as an expert witness. He expressed the opinion that the thermostat in the 300-gallon water tank should have been set at 140 degrees and characterized such a setting as the accepted standard. He further gave the opinion that the fact that on the *233 day following the intestate’s accident the temperature at the tank was 178 degrees and at the tub 152 degrees and the further fact that on the second day following the accident the temperature at the tank was 180 degrees and at the tub 169 degrees, all with a setting of the thermostat of 160 degrees, was an indication that the system could not have been working properly. There is no proof before us as to what the temperature of the water was, either at the tank or at the tub, on the day of the accident.
Offsetting the opinion of the expert we have the testimony of Dressel who explained the variances of the water temperature on March 29 and 30 and his further testimony and that of Murphy who found nothing wrong with the operation of the system when they examined it on March 30. We have before us, also, the history of no prior accidents from water that was too hot and of complaints that at times the supply of hot water was insufficient.
In directing a new trial the Supreme Court, Appellate Division, Fourth Department noted the aforesaid variances in water temperature but stated: “ In the posture in which the case comes to us we express no opinion as to the relationship of these facts to a finding of the exercise of due care on the part of the State. ’ ’
The reversal of the original judgment and the direction for a new trial negate the contention of the claimants that the State of New York was under a duty to furnish intestate with water incapable of scalding him. The request for such a finding- must be refused. We likewise refuse to find, as requested, that the thermostat should have been set at 140 degrees. Upon the whole record there is a failure of proof that the State of New York did not exercise reasonable care in the operation of its institution and in the training and care of its ward.
Although handicapped by defective vision Thomas Minotti was intelligent, alert, well trained and self-reliant. In our review of the situation, following the first trial, we discussed the question of his contributory negligence in the light of the proof with respect to his instruction and training in the use of the bathing facilities at the school and the testimony that when the house father found Minotti, scalded, both the cold water and the hot water were running into the tub and that it took two turns of the faucet to shut off the hot water but approximately a quarter of a turn to shut off the cold water. The issue of the intestate’s freedom from contributory negligence, under all the circumstances, is not free from doubt. But inasmuch as the burden is upon the defendant and because the Appellate Division did not disturb our previous finding on this point we adhere to a *234 holding that the defense has not met its burden and refuse a request to find that decedent was guilty of contributory negligence.
Requests to find have been adopted or refused and, as so marked, are filed herewith.
The claim must be dismissed. Enter judgment.